IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

DARNELL H. FULLMAN, SR.,                    :
                                             :
              Plaintiff,                     :
                                             :
       v.                                    : Civil Action No. 17-1870-RGA
                                             :
TC ELECTRIC CO.,                             :
                                             :
              Defendant.                     :

_____

Darnell H. Fullman, Sr., Bear, Delaware.  Pro Se Plaintiff.

Justin P. Callaway, Michele W. Weckerly, Salmon, Ricchezza, Singer & Turchi LLP,
Wilmington, Delaware.  Counsel for Defendant.


**<u>MEMORANDUM OPINION</u>**


August 13, 2020
Wilmington, Delaware

/s/ Richard G. Andrews
**ANDREWS, U.S. District Judge:**

Plaintiff Darnell H. Fullman, Sr., who proceeds *pro se*, filed this employment

discrimination action pursuant to Title VII of the Civil Rights Act of 1964, as amended,

42 U.S.C. §§ 2000e, *et seq.*, and the Age Discrimination in Employment Act of 1967, as

amended, 29 U.S.C. §§ 621, *et seq.*  (D.I. 2).  Before the Court is Defendant's amended

motion for summary judgment.  (D.I. 57).  Briefing is complete.  (D.I. 58, 60, 61).

## I.      BACKGROUND/FACTS[1]

Plaintiff alleges employment discrimination by reason of race, color, and age,

when his employment was terminated by Defendant T.C. Electric Co., Inc. on February

5, 2016.  (D.I. 2 at 2).  Plaintiff filed a charge of discrimination on October 7, 2017 (sic),[2]

and received a notice of suit rights from the EEOC dated October 3, 2017.  (D.I. 2 at 2;

D.I. 2-1).

Plaintiff, an African American, has worked in the construction field since he was

seventeen years old and has worked for Defendant on two separate occasions.  (D.I.

58-2 at 7, 10-11, 18).  The first time was in 2002, and the second was in 2014.  (*Id.* at

10-11, 19).

In February 2014 when Defendant hired Plaintiff as an electrical helper, he was

in his early forties.  (D.I. 58-2 at 19; D.I. 58-3 at 2-3).  At that time, Plaintiff was given a

copy of the employee handbook that states all employees were expected to work forty

hours per week.  (D.I. 58-2 at 25-26).  The handbook states that field working hours are

---

[1] The facts are construed in the light most favorable to Plaintiff, the non-moving party.
[2] Plaintiff filed a charge of discrimination with the Delaware Department of labor on
November 2, 2016.

6:15 a.m. to 3/3:30 p.m., Monday through Friday, with a one-half-hour lunch break.  (D.I. 58-5 at 3).  Plaintiff acknowledged that did "not really" read the handbook or ask any questions about its contents, but he understood that he "worked 40 hours a week."  (D.I. 58-2 at 26, 59).

Plaintiff testified rather hazily about what time work started.  Plaintiff's view was that it "didn't really matter" because the "main thing" was that the job was "completed by the deadline."  (*Id.* at 32-34, 36-37).  Plaintiff admitted[3] that on more than one occasion he was either late to work, or failed to come to work at all and that he failed to notify Defendant that he would be late or absent.  (D.I. 58-4 at 4-6).  Due to his excessive tardiness/absenteeism, Plaintiff received a written warning on October 21, 2015.  (*Id.* at 3, 11).  Plaintiff was warned that future infractions could result in his dismissal.  (*Id.* at 11).  Plaintiff signed an acknowledgement of the written warning.  (*Id.*).

On January 18, 2016, approximately three weeks prior to the termination of Plaintiff's employment, he was carpooling to work with a co-worker and, when they arrived at work, the co-worker was told that he had been fired.  (D.I. 58-2 at 39, 41, 42).  Plaintiff spoke to his supervisor who told Plaintiff that he remained employed, that Defendant was aware that Plaintiff was carpooling, and that Plaintiff could have the rest of the day off to arrange for other transportation to work.  (*Id.* at 40, 43).

That day Plaintiff rented a car, and a week later he purchased a vehicle.  (*Id.* at 43-45)  On February 4, 2016, Plaintiff received a phone call that there was an issue with the vehicle's financing, and he would have to return the vehicle to the dealership

---

[3] The requests for admissions served upon Plaintiff on November 26, 2018 were deemed admitted.  (*See* D.I. 51, ¶ 6).

until the issue was resolved. (*Id.* at 46). Plaintiff made an agreement with the dealership to return the vehicle the next day at 6:30 a.m. (*Id.* at 47-48).

The next morning, on his way to work, Plaintiff called Defendant after 6:30 a.m. and was not able to reach his supervisor until approximately 7:45 a.m. (*Id.* at 49, 50). When Plaintiff spoke to his supervisor, he was already late for work and Plaintiff was told that he was being terminated as a "no call/no show." (*Id.* at 51). Plaintiff admitted that he was terminated by Defendant  February 5, 2016 for being late to work, and that his termination had absolutely nothing to do with his race, skin color, or age. (D.I. 58-4 at 7-8).

Following the termination of his employment, Plaintiff filed a charge of discrimination. Plaintiff testified that he wanted to file a complaint for wrongful termination but was told that he could only assert a claim if he included allegations of discrimination. (D.I. 58-2 at 56). During his deposition, Plaintiff testified that he has no evidence that his termination was because of his age, no evidence that it was based upon his color, and no evidence that he was terminated because of his race. (*Id.* at 53, 54, 55). He testified that he has no evidence that his termination was based upon anything other than the fact that he was late to work. (*Id.* at 53).

Defendant moves for summary judgment on the grounds that:  (1) there is no evidence that the termination of Plaintiff's employment was motivated by race or color; and (2) there is no evidence that the termination of Plaintiff's employment was motivated by age and Plaintiff has admitted the allegations are baseless. (D.I. 58).

Plaintiff's opposition to the motion for summary judgment consists solely of argument and is not accompanied by sworn affidavits or signed under penalty of

3

perjury.  (D.I. 60).  Nor does it cite to any record evidence.  Under Rule 56(e), "If a party

fails to properly support an assertion of fact . . . the court may consider the fact

undisputed for purposes of the motion . . . [and] grant summary judgment if the motion

and supporting materials – including the facts considered undisputed – show that the

movant is entitled to it."  Fed. R. Civ. P. 56(e)(2) & (3); *see also Byrne v. Monmouth Cty.*

*Dep't of Health Care Facilities*, 372 F. App'x 232, 233-34 (3d Cir. 2010) (unsworn

certification not supported by any documentation or factual testimony is insufficient to

defeat summary judgment); *Williams v. Borough of West Chester*, 891 F.2d at 458, 460

(3d Cir. 1989) (nonmoving party cannot simply assert factually unsupported allegations

to meet burden at summary judgment).

## II.    LEGAL STANDARDS

"Summary judgment is proper when, viewing the evidence in the light most

favorable to the nonmoving party and drawing all inferences in favor of that party, there

is no genuine dispute as to any material fact and the moving party is entitled to

judgment as a matter of law."  *Drumgo v. Kuschel*, 811 F. App'x 115, 117 (3d Cir. 2020)

(citing Fed. R. Civ. P. 56(a)).  A fact in dispute is material when it "might affect the

outcome of the suit under the governing law" and is genuine "if the evidence is such that

a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 248 (1986).  "In considering a motion for summary judgment,

a district court may not make credibility determinations or engage in any weighing of the

evidence; instead, the nonmoving party's evidence 'is to be believed and all justifiable

inferences are to be drawn in his favor.'"  *Marino v. Indus. Crating Co.*, 358 F.3d 241,

247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255).  A court's role in deciding a

4

motion for summary judgment is not to evaluate the evidence and decide the truth of the matter but rather "to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

A party moving for summary judgment has the initial burden of showing the basis for its motion and must demonstrate that there is an absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmoving party to show that there is a "genuine issue for trial." *Id.* at 324. To withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict the moving party. *Anderson*, 477 U.S. at 250.

There is "no genuine issue as to any material fact" if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex Corp.*, 477 U.S. at 322. "If reasonable minds could differ as to the import of the evidence," however, summary judgment is not appropriate. *See Anderson*, 477 U.S. at 250-51.

## III.    DISCUSSION

Defendant moves for summary judgment on the grounds that there is no evidence that Plaintiff was treated unfairly or singled out due to his color, race, or age.

Federal law prohibits employment discrimination based on race, color, religion, sex, national origin, age, and disability. *See E.E.O.C. v. Allstate Ins. Co.*, 778 F.3d 444, 448-49 (3d Cir. 2015). Disparate treatment claims brought under Title VII and the ADEA are analyzed under the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). "[A]n employee must first establish a prima facie case of

discrimination, after which the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for its adverse employment decision." *Fasold v. Justice*, 409 F.3d 178, 184 (3d Cir. 2005).  If the defendant meets this burden, then the burden shifts back to the plaintiff to present "some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely that not a motivating or determinative cause of the employer's action." *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994).  While the burden of production may shift, the ultimate burden of persuading the trier of fact that the employer intentionally discriminated against the employee remains at all times with the employee.  *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 (1993).

To establish a prima facie case of employment discrimination under Title VII, a plaintiff must show that: (1) he is a member of a protected class; (2) he was qualified for the position in question; (3) he suffered an adverse employment action; and (4) the adverse action occurred under circumstances giving rise to an inference of discrimination.  *See McDonnell Douglas Corp.*, 411 U.S. at 802; *see also Sarullo v. United States Postal Serv.*, 352 F.3d 789, 797 (3d Cir. 2003).  For a prima facie case of age discrimination, a plaintiff must establish that: "(1) he is over forty, (2) he is qualified for the position in question, (3) he suffered from an adverse employment decision, and (4) his replacement was sufficiently younger to permit a reasonable inference of age discrimination." *Hill v. Borough of Kutztown*, 455 F.3d 225, 247 (3d Cir. 2006) (footnote omitted).

Plaintiff has not established a prima facie case of race, color, or age discrimination.  While Plaintiff meets the first three elements of a prima face case under each theory, the record evidence does not support a finding that the adverse employment action (*i.e.*, termination of employment) gives rise to an inference of unlawful discrimination.  Notably, Plaintiff testified that he has no evidence of race, color, or age discrimination.

Even assuming, arguendo, that Plaintiff did establish a prima facie case of discrimination, Defendant has articulated a legitimate, nondiscriminatory reason for terminating Plaintiff's employment.  Plaintiff had a history of being late and absent, he was warned that future behavior would result in the termination of his employment and acknowledged the consequences of such action.  Nonetheless, even after he was warned, Plaintiff was late on February 5, 2016 without timely notifying Defendant and this resulted in the termination of his employment.  Once Defendant proffered a legitimate, nondiscriminatory reason, the burden shifted to Plaintiff to establish that Defendant's proffered reason was truly pretext for discrimination based on his race, color, or age.  Plaintiff has failed to meet this burden.

Plaintiff produced no evidence that Defendant's proffered reason is subject to such weaknesses and implausibilities sufficient "to satisfy the factfinder that [Defendant's] actions could not have been for nondiscriminatory reasons." *Willis v. UPMC Children's Hosp. of Pittsburgh*, 808 F.3d 638, 644-45 (3d Cir. 2015).  Nor has he pointed to evidence leading a factfinder to reasonably believe that a discriminatory reason was more likely than not a motivating or determinative factor in his termination. *Id.* at 645.  Plaintiff acknowledged that he has no evidence that the termination of his

employment was based upon anything other than the fact that he was late to work. But even if he had not so acknowledged, that is an accurate statement of the record.

There is no record evidence that shows that Defendant's reason for terminating Plaintiff's employment was pretext for race, color, or age discrimination.  Therefore, Defendant's motion for summary judgment will be granted.

## IV.    CONCLUSION

For the above reasons, the Court will grant Defendant's amended motion for summary judgment.

An appropriate order will be entered.